Mr. James G. Sisco St. Johns County Attorney Post Office Box 1533 St. Augustine, Florida 32085-1533
Dear Mr. Sisco:
You have asked for my opinion on substantially the following questions:
1. If St. Johns County uses any portion of its tourist development tax revenues to pay debt service on a county-owned convention center, will the provisions of section 125.0104(7), Florida Statutes, act to terminate the tourist development tax upon retirement of the bonds sold to finance construction of the convention center?
2. If the answer to Question One is in the affirmative, could the expired county ordinances imposing the tourist development tax be reenacted without the need for approval in a new referendum election?
In sum:
1. The use of tourist development tax funds by St. Johns County to pay debt service on a county-owned convention center may well implicate section 125.0104(7), Florida Statutes. Under these circumstances, the county may wish to consider other sources for these payments rather than jeopardizing the continued viability of the tourist development tax.
2. St. Johns county may not readopt its tourist development tax ordinance pursuant to section 125.0104(7), Florida Statutes, without voter approval by referendum.
Question One
Section 125.0104, Florida Statutes, known as the Local Option Tourist Development Act,[1] authorizes a county to impose a tax on short-term rentals of living quarters or accommodations within the county unless such activities are exempt pursuant to Chapter 212, Florida Statutes.[2] The purpose and intent for adoption of section 125.0104, Florida Statutes, is to "provide for the advancement, generation, growth and promotion of tourism, the enhancement of the tourist industry, and the attraction of conventioneers and tourists from within and without the state to a particular area or county of the state."[3]
The tourist development tax is levied and imposed pursuant to an ordinance enacted by the county commission and containing the county tourist development plan.[4] The plan itself, prepared and submitted by the county tourist development council,
"shall set forth the anticipated net tourist development tax revenue to be derived by the county for the 24 months following the levy of the tax; the tax district in which the tourist development tax is proposed; and a list, in the order of priority, of the proposed uses of the tax revenue by specific project or special use. . . ."[5]
The voters of the county in which the tax is to be levied must approve imposition of the tax by referendum.[6]
Section 125.0104(7), Florida Statutes, as amended by section 6, Chapter 00-312, Laws of Florida,[7] provides for the automatic expiration of the tourist development tax upon the retirement of certain bonds. This statute provides:
"Anything in this section to the contrary notwithstanding, if the plan for tourist development approved by the governing board of the county, as amended from time to time pursuant to paragraph (4)(d), includes the acquisition, construction, extension, enlargement, remodeling, repair, or improvement of a publicly owned and operated convention center, sports stadium, sports arena, coliseum, or auditorium, or a museum that is publicly owned and operated or owned and operated by a not-for-profit organization, the county ordinance levying and imposing the tax shall automatically expire upon the later of:
(a) Retirement of all bonds issued by the county for financing the same; or
(b) The expiration of any agreement by the county for the operation or maintenance, or both, of a publicly owned and operated convention center, sports stadium, sports arena, coliseum, auditorium, or museum. However, nothing herein shall preclude that county from amending the ordinance extending the tax to the extent that the board of the county determines to be necessary to provide funds with which to operate, maintain, repair, or renew and replace a publicly owned and operated convention center, sports stadium, sports arena, coliseum, auditorium, or museum or from enacting an ordinance pursuant to the provisions of this section reimposing a tourist development tax, upon or following the expiration of the previous ordinance."
Thus, if the tourist development plan for St. Johns County includes a provision for the "acquisition, construction, extension, enlargement, remodeling, repair, or improvement of a publicly owned and operated convention center, sports stadium, sports arena, coliseum, or auditorium, or a museum that is publicly owned and operated or owned and operated by a not-for-profit organization," the county tourist development tax ordinance automatically expires as prescribed by statute. This takes place upon the later of two events: 1) when the bonds for such a project are retired; or 2) upon the expiration of any agreement by the county for the operation or maintenance or both of the facility.
In 1986 St. Johns County adopted ordinance 86-72, which levied a two percent tourist development tax to "fund the St. Johns County tourist development plan[.]" The St. Johns County tourist development plan allocated percentages of the total dollars budgeted to be spent as follows: forty percent to tourism promotion, thirty percent to cultural development, and thirty percent to leisure/recreation development. The plan directs how the estimated tourist development tax revenues were to be spent for the first 24 months of collection and then authorizes:
"Any monies collected in excess of the budgeted amount and any monies budgeted but not expended, will be held in the reserve account of the Tourist Development Trust Fund to be expended by the Board of County Commissioners in the manner as set forth in the Local Option Tourist Development Act, Florida Statute 125.0104
as amended."
The plan for expenditure of the tourist development tax includes, under the heading "leisure/recreational development," a category for "acquiring, constructing, extending, enlarging, remodeling, repairing, improving, maintaining, operating, promoting publicly owned leisure/recreational activities facilities."
The county ordinance limits the use of tourist development tax revenues to those purposes set forth in section 125.0104, Florida Statutes. The ballot item presented to the voters, which was approved and became St. Johns County Ordinance 86-72, stated that "[t]he tax proceeds are to be used to promote and assist tourism for St. Johns County Florida, as described in the ordinance establishing the tax." Thus, the voters approved the use of the two percent tax revenues pursuant to the tourist development tax as described in the plan and then authorized the county to use additional revenues for any of the purposes authorized in section125.0104(5), Florida Statutes.
Subsequent ordinances levied an additional third cent tourist development tax to be used for those purposes authorized in the original legislation[8] and mandated that any change in the spending categories established in the original tourist development plan may be changed only by a referendum election approving such a change.[9]
In 1996 St. Johns County constructed a convention center and financed the construction by issuing taxable county revenue bonds payable over a thirty-year period. As security for the bonds, the county agreed to appropriate in its annual budget an amount from non-ad valorem funds lawfully available to the county. This amount is deposited into one of the bond funds that secure payment of principal and interest on the bonds.
The county has determined that one of the potential sources of non-ad valorem revenues available to satisfy its obligation under the convention center contract is the surplus generated by the tourist development tax. However, the county is concerned that an unintended consequence of appropriating this money could be the operation of section 125.0104(7), Florida Statutes, to terminate the county tourist development tax.
In light of the inclusion of language relating to the acquisition and construction of "publicly owned leisure/recreational activities facilities" in the tourist development plan adopted by St. Johns County, the use of tourist development tax funds to pay debt service on the county-owned convention center may well implicate section 125.0104(7), Florida Statutes. Under these circumstances, the county may wish to consider other sources for these payments rather than jeopardizing the continued viability of the tourist development tax.
Question Two
You ask, in light of my response to Question One, whether section125.0104(7), Florida Statutes, as amended, would require a referendum election for approval of a reimposed tourist development tax. As discussed below, it is my opinion that a referendum is required.
Section 125.0104(7), Florida Statutes, provides that,
"[N]othing herein shall preclude that county from amending the ordinance extending the tax to the extent that the board of the county determines to be necessary to provide funds with which to operate, maintain, repair, or renew and replace a publicly owned and operated convention center, sports stadium, sports arena, coliseum, auditorium, or museum or from enacting an ordinancepursuant to the provisions of this section reimposing a tourist development tax, upon or following the expiration of the previous ordinance." (e.s.)
The statutory provisions setting forth the procedure for the levy of the tourist development tax under section 125.0104, Florida Statutes, state that "[t]he ordinance levying and imposing the tourist development tax shall not be effective unless the electors of the county or the electors in the subcounty special district in which the tax is to be levied approve the ordinance authorizing the levy and imposition of the tax, in accordance with [section125.0104(6), Florida Statutes]."[10] Counties, like municipalities, derive their taxing authority from the Florida Constitution. Article VII, section 9(a), of the Florida Constitution, provides:
Counties, school districts, and municipalities shall, and special districts may, be authorized by law to levy ad valorem taxes and may be authorized by general law to levy other taxes, for their respective purposes, except ad valorem taxes on intangible personal property and taxes prohibited by this constitution.
Counties have no independent authority to levy taxes, but must rely on a constitutional or statutory provision to exercise this taxing authority.[11] Thus, a county must follow the statutory provisions prescribing the levy and collection of taxes and may not proceed in any fashion other than that specifically authorized.[12]
Section 125.0104(7), Florida Statutes, requires that a county proceed "pursuant to the provisions of this section" to reimpose a tourist development tax. The procedure set forth in section125.0104, Florida Statutes, for levying the tourist development tax requires approval by voter referendum. No other method of proceeding is authorized, nor is an alternative set forth for reimposing the tax.
In light of the limitations on counties relating to levying and collecting taxes, and the language of section 125.0104(4) and (7), Florida Statutes, it is my opinion that a county may not readopt its tourist development tax ordinance pursuant to section125.0104(7), Florida Statutes, without voter approval by referendum.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tgh
[1] Section 125.0104(1), Fla. Stat.
[2] See, s. 125.0104(3)(a), Fla. Stat., stating it is the intent of the Legislature that every person who rents, leases, or lets living quarters or accommodations in "any hotel, apartment hotel, motel, resort motel, apartment, apartment motel, roominghouse, mobile home park, recreational vehicle park, or condominium for a term of 6 months or less is exercising a privilege which is subject to taxation under this section. . . ."
[3] See, Ops. Att'y Gen. Fla. 98-74 (1998), 95-71 (1995), 94-12 (1994), 87-16 (1987), and 83-18 (1983).
[4] Section 125.0104(4)(a), Fla. Stat.
[5] Section 125.0104(4)(c), Fla. Stat.
[6] Section 125.0104(4)(a), Fla. Stat.
[7] Pursuant to s. 17, Ch. 00-312, Laws of Florida, the act took effect upon becoming a law. The act was approved by the Governor on June 16, 2000.
[8] St. Johns County Ordinance 91-44.
[9] St. Johns County Ordinance 92-32.
[10] Section 125.0104(4)(a), Fla. Stat.
[11] See, e.g., Amos v. Mathews, 126 So. 308 (Fla. 1930), andCollier County v. State, 733 So.2d 1012 (Fla. 1999).
[12] It is the rule that a legislative direction as to how a thing shall be done is, in effect, a prohibition against its being done in any other way. See, Alsop v. Pierce, 19 So.2d 799,805-806 (Fla. 1944); Thayer v. State, 335 So.2d 815, 817 (Fla. 1976).